[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13518
_____

D.C. Docket No. 1:11-cr-20350-JAL-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MATTHEW ANDREW CARTER,
a.k.a. Bill Carter,
a.k.a. William Charles Harcourt,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 27, 2015)


Before HULL and JULIE CARNES, Circuit Judges, and ROTHSTEIN,[*] District
Judge.

_____

[*]Honorable Barbara J. Rothstein, United States District Judge for the Western District of
Washington, sitting by designation.

HULL, Circuit Judge:

After a jury trial, Matthew Andrew Carter, also known as William Charles Harcourt or Bill Carter, appeals his convictions for one count of travel in foreign commerce for the purpose of engaging in a "sexual act" with a minor, in violation of § 2423(b); four counts of travel in foreign commerce for the purpose of engaging in "illicit sexual conduct" with a minor, in violation of 18 U.S.C. § 2423(b) and (f); and one count of attempting to travel in foreign commerce for the same later purpose, in violation of 18 U.S.C. § 2423(e).[1]  After review of the record and the briefs, and with the benefit of oral argument, we affirm.

## I. BACKGROUND

### A.    The Six-Count Indictment

On January 12, 2012, a federal grand jury returned a six-count, second superseding indictment against Defendant Carter.  While Counts One through Five each charged violations of 18 U.S.C. § 2423(b), Count One is described separately because the language of § 2423(b) was amended before the date of the conduct alleged in Counts Two through Five.[2]  Furthermore, as recounted later, Carter's

---

[1]Section 2423(b) criminalizes travel in foreign commerce for the purpose of engaging in illicit sexual conduct with a minor, while § 2423(e) makes attempt to violate § 2423(b) punishable in the same manner as a completed violation.

[2]See Prosecutorial Remedies and Tools against the Exploitation of Children Today Act of 2003, Pub. L. No. 108–21, § 105, 117 Stat 650, 654.

2

defense counsel made arguments regarding Count One that he did not make regarding Counts Two through Five.  See infra, Part I.E.

Count One alleged that Carter violated 18 U.S.C. § 2423(b) by traveling to Haiti on or about October 2, 2001, "for the purpose of engaging in any sexual act, as defined in [18 U.S.C. § 2246] with a person under 18 years of age that would be in violation of Title 18, United States Code, Chapter 109A, if the sexual act occurred in the special maritime and territorial jurisdiction of the United States." Count One tracked the language of the § 2423(b) statute in effect in 2001, which provided:

> A . . . United States citizen . . . who travels in foreign commerce . . . for the purpose of engaging in any sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States shall be fined under this title, imprisoned not more than 15 years, or both.

18 U.S.C. § 2423(b) (2000).

In Counts Two through Five, the indictment alleged that Carter violated 18 U.S.C. § 2423(b) on occasions in 2003, 2004, 2006, and 2009 by traveling from the United States to Haiti for the purpose of engaging in "illicit sexual conduct," as defined in § 2423(f), with a minor.  At the time of the conduct in Counts Two through Five, §§ 2423(b) and (f) provided:

(b) **Travel with intent to engage in illicit sexual conduct.**--A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

. . .

(f) **Definition.**--As used in this section, the term "illicit sexual conduct" means (1) a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States; or (2) any commercial sex act (as defined in section 1591) with a person under 18 years of age.

18 U.S.C. § 2423.  Thus, while "any sexual act . . . with a person under 18 years of age" was changed to "illicit sexual conduct" in § 2423(b), the definition of "illicit sexual conduct" in § 2423(f) still included "sexual act[s] . . . with a person under 18 years of age" (as defined in section 2246).

Count Six charged an attempt offense, specifically that Carter violated 18 U.S.C. § 2423(e) in 2011 by attempting to travel from the United States to Haiti for the purpose of engaging in illicit sexual conduct with a minor.

**B.    The Evidence at Trial**

The case proceeded to trial, which lasted for more than three weeks.  The government introduced evidence that Carter, an American citizen, ran the Morning Star Center (the "Center"), a residential facility in Haiti that provided shelter, food,

schooling, and amenities to local youths whose families could not afford to care for them.  From 1995 until 2011, Carter operated the Center at various locations near Port-au-Prince, Haiti.  The Center included a health clinic for the people living in the surrounding neighborhood, which provided free services to local residents following the January 2010 earthquake in Haiti.  Carter regularly traveled to the United States to raise charitable funds from churches and other donors to finance the Center's continued operation.

The Center and its clinic, however, were the façade Carter used to shield his abuse of young boys in Haiti for more than a decade and a half.  Sixteen witnesses testified that Carter sexually abused them when they lived at, or frequented, the Center between 1995 and 2011.  The abuse included Carter performing oral sex on children, requiring children to perform oral sex on him, touching the genitals of children, attempting to engage in anal sex with children, and requiring children to masturbate him.  All of Carter's victims were male children.  If the children complied with his sexual demands, Carter would provide them with gifts and treat them better than he would other children at the Center.  But if a child refused to comply with his sexual demands, Carter would hit the male child with closed fists, spank him with sticks, and give him "the worst kind of chores."  The victims did not report the abuse to others or leave the facility because they were ashamed or

afraid of Carter.  The abuse ended when Carter was arrested at Miami International Airport on May 8, 2011.

## C.    The Testimony of Witness G.S.

Among the witnesses to testify during the government's case in chief was G.S., who testified that he lived as a child at the Center in Haiti and that Carter repeatedly forced him to masturbate Carter.[3]  Carter also requested oral sex from G.S. and, on at least one occasion, made G.S. and other boys strip naked and touch their own genitals, ostensibly in an effort to locate five dollars that were missing. G.S. also testified that Carter sexually abused other boys and would beat or otherwise punish them if they refused to comply with Carter's sexual demands. On direct examination, G.S. admitted that he had not disclosed that Carter had forced him to masturbate Carter until two days before his testimony.  G.S. testified that he had not previously disclosed that abuse "[b]ecause these are ugly things. For them to come out of me, they are very ugly things.  And I have to tell the truth. I wanted to come and tell it to him in his face.  I was waiting to see if I would be part of the trial so I could tell it to him in his face."

On cross-examination, Carter's defense counsel began to question G.S. about the contents of his initial interview with law enforcement, which occurred on

---

[3]Although he was an adult at the time of the trial, G.S.'s full name is not included in the trial transcript because he was a minor when he alleges that Carter abused him.  We use this convention throughout the remainder of this opinion when discussing witnesses who alleged that they were abused as children.

6

May 22, 2011, only two weeks after Carter's arrest in connection with this case. During this line of questioning, defense counsel eventually asked G.S. whether he had told government agents "that not only did he not touch you sexually" but also "that you saw nothing improper going on at the program."

The government objected on hearsay grounds, but Carter's defense counsel argued that the question was permissible impeachment based on prior inconsistent statements. Defense counsel referred to notes prepared by law enforcement from the May 22, 2011 interview with G.S., which indicate that G.S. told the interviewer that "[t]his guy never did anything to me because he never did anything to me." Defense counsel also proffered that G.S. told law enforcement on November 30, 2011, that he never saw Carter do anything to any children, although G.S. knew that Carter did "bad things to some of the boys at night." The government noted that those statements attributed to G.S. were "based on law enforcement [notes] . . . and not from any sworn statements taken under oath or any recorded statements." The government then summarized its objection as not objecting to this line of inquiry, but only to the form of the question as hearsay, stating:

> The Government doesn't object to the line of inquiry that defense counsel seeks to make. The Government would only object to the form of the question as characterizing it as hearsay: On such-and-such date, didn't you tell law enforcement X, Y or Z?
>
> The Government would also object to the theatrical use of the law enforcement reports, as [defense counsel]

7

reads from them and waves them around to the jury. We think that's inappropriate.

It gives the impression that he's reading from some sort of official document. It gives the impression to the jury that the defense counsel is actually reading the witness's actual statements when that is not, in fact, the case.

The district court ruled that Carter's defense counsel could question G.S. about those subject matters but not in the type of question form being used.

Defense counsel then continued his cross-examination of G.S. G.S. admitted that, at his first meeting with law enforcement, G.S. denied being involved in any sexual activity with Carter. The district court then sustained the government's objection to other questions about this meeting, directing the defense counsel to rephrase his questions: something that counsel never successfully did.

Defense counsel then began asking questions of G.S. about a later meeting with law enforcement, held on November 30, 2011. Defense counsel asked G.S., "You, in fact, denied again participating in any sexual activity with [Carter]. Correct?" The government objected, but the district court overruled the objection. G.S. then testified that he had, in fact, made that denial. Defense counsel continued asking G.S. about his statements to law enforcement.

During this line of questioning, the district court repeatedly overruled government objections on hearsay grounds. Finally, given the numerous

8

objections by the government as to counsel's good faith basis for asking particular questions, the district court ruled:

> What I will allow you to do, [defense counsel], is detail with him how many meetings he had since he arrived in the country—how many meetings he had with the Government since he arrived in the country and up until two days ago he didn't reveal anything.

After this ruling, defense counsel elicited from the witness that the witness had first told agents about his sexual abuse only two days before trial and had not told agents before because he was embarrassed.

## D.    Mid-Trial Motions for Foreign Witness Depositions

On February 12, 2013, a week after the evidentiary portion of the trial began and during the government's case in chief, Carter moved to take four witness depositions in Haiti, pursuant to Federal Rule of Criminal Procedure 15. Carter's motion stated that his lawyers, who traveled to Haiti after the jury was selected but before the jury was impaneled, had found three "exculpatory witnesses" living near the Center in Haiti who did not have passports or visas and could not afford to secure those documents to travel to the United States to testify. Carter's counsel proffered that the witnesses would testify that Carter helped the residents who lived near the Center and that they saw no signs of sexual abuse. Specifically, the witnesses would

> testify how the defendant was an asset to the neighborhood and how [Carter] and the other residents of

9

the Morning Star Center helped the neighborhood both before and after the earthquake with donations of food, clothing and medical supplies. In addition, they will testify that due to the actions of Mr. Carter, many lives were saved both in the neighborhood and the nearby tent city after the earthquake.

They will also testify that during their time in the neighborhood they interacted with both Mr. Carter and the residents of the Morning Star Center. They will testify that the residents were well treated by the defendant and they saw absolutely no signs of the sexual abuse that has been alleged.

They will also testify how the residents interacted with those in the neighborhood and there were no signs of sexual abuse that support the allegations against the defendant.

Additionally, Carter's counsel sought to take a deposition of Pastor Alan Randall, a witness in Haiti who was "unable to travel to the United States because his wife recently suffered a massive heart attack and he cannot leave her for an extended period of time." Carter's counsel proffered that Pastor Randall would testify he visited the Center and saw no sign of sexual abuse:

Randall will testify that he has been to the Morning Star Center on many occasions. He had been invited to dinner many times. In addition, he visited the Morning Star Center with personnel from the United Nations. He will further state under oath that he saw absolutely no sign of any sexual contact or abuse from the defendant.

10

On February 19, 2013, Carter's counsel filed a supplement to his motion to depose the three witnesses who lived in the neighborhood around the Center.[4] Carter again contended that the three witnesses would testify that there were no signs of sexual abuse that support the allegations against the defendant. However, Carter's supplement to the motion to depose focused on the fact that the government had introduced evidence of Carter's interactions at the Center with children in the neighborhood. In light of the testimony elicited by the government, Carter argued, the depositions were "more crucial now" and the motion should be granted.

A day later, on February 20, 2013, Carter's counsel filed another, separate motion to depose a foreign witness pursuant to Rule 15. In that motion, Carter requested permission to depose Kate Jensen, who lived in Copenhagen, Denmark. Carter stated that Jensen was scheduled to travel to the United States on February 27, 2013, but that she suffered a setback in her recovery from a broken left shoulder and was no longer able to appear in person. Carter's counsel proffered that Jensen would also testify that she visited the Center and never suspected any sexual abuse was occurring:

> Ms. Kate Jensen, if permitted to testify[,] would state that she is a criminal investigator/police officer with the Copenhagen Police Department who was on a leave of absence and assigned to the United Nations in Haiti from

---

[4]This motion did not mention the fourth witness in Haiti, Pastor Randall.

approximately 2006 to 2011. She met the defendant in early 2009 at a BBQ with about 15 residents of the Morning Star Center. She would testify that the children were very well behaved and very respectful to all of the guests. Off[icer] Jensen was so impressed with the children's behavior that she visited the Morning Star Center on numerous occasions. During those visits she would stay for dinner but not spend the night. When she heard that Bill Carter (a male) was operating a children's home with only boys, her criminal investigators' background kicked in and she wanted to make sure nothing illegal was going on. Ms. Jensen will testify that at no time did she ever suspect that any type of sexual abuse was going on at the orphanage. It appeared to her that all of the children loved being there.

Carter's defense counsel informed the district court that Jensen "is not an expert but is a fact witness."

Before the defense presented its case in chief, the district court orally denied both motions to depose witnesses. The government offered to stipulate certain facts to which the foreign witnesses would allegedly testify, including that none of the witnesses personally observed Carter engaging in illicit sexual conduct with the Center's residents, but defense counsel rejected the stipulation, stating that "nothing could take the place of the Rule 15 depositions." Carter's counsel then made a renewed, oral motion to take the five foreign witness depositions. The district court denied the renewed motion, saying that the testimony Carter sought was immaterial to the case and cumulative of other evidence. The district court

supplemented its oral order with a written order that explained its reasons for denying the motions to depose foreign witnesses.

## E.    Motion for Judgment of Acquittal

At the conclusion of the government's case in chief, Carter's defense counsel moved for judgment of acquittal on all counts, pursuant to Federal Rule of Criminal Procedure 29(a).  As to all counts, Carter argued, inter alia, that the government failed to introduce evidence sufficient to sustain a conviction.

With regard to Count One only, Carter's defense counsel also argued that the § 2423(b) statute applicable to that count required the government to prove that the defendant engaged in a sexual act with a minor and that the act was performed within the special maritime and territorial jurisdiction of the United States.  As to Count One, Carter's defense counsel contended that there was no "evidence to show that any of the purported sexual acts that occurred [around] October, 2001, ever occurred within the special maritime and territorial jurisdiction of the United States," and that Carter was therefore entitled to a judgment of acquittal as to Count One.[5]

---

[5]Carter's defense counsel did not make this argument as to Counts Two through Five because those counts alleged violations that occurred after the 2003 amendment to § 2423(b), which he apparently interpreted as removing the requirement that the government prove a sexual act occurred within the special maritime and territorial jurisdiction of the United States.  During trial, defense counsel stated:

> Count 1 charges that, on or about October 2nd, 2001, . . . the
> Defendant, a United States citizen, did travel in foreign commerce

13

After hearing arguments, the district court denied Carter's motion for judgment of acquittal as to all counts.

## F.    The Introduction of Government Exhibit 105

Carter's counsel then put on Carter's defense, which included only one witness: Carter.

Carter denied every allegation of sexual abuse.  Carter admitted that he traveled from the United States to Haiti on each of the dates alleged by Counts One through Five.  But he testified that his purpose in traveling to Haiti was to support

---

from the United States . . . to Haiti for purposes of engaging in any sexual act, as defined in [18 U.S.C. § 2246], with a person under 18 years of age that would be a violation of Title 18, United States Code, Chapter 109—and this is the language I want the Court to focus on—if the sexual act occurred in the special maritime and territorial jurisdiction of the United States . . . .

While the evidence that Mr. Carter may or may not have committed sexual acts with persons under 18 years of age during this time period is a jury question, the issue as to whether the acts occurred within the special maritime and territorial jurisdiction of the United States is also a question of law. . . . However, the evidence that came in through this—through the Government's case in chief failed to show that the acts occurred in the special maritime and territorial jurisdiction.

If the Court notes[,] the remaining counts, 2 through 6, do not have that requirement.  Only Count 1 [includes the location as an element], based on the age of that count.  And, therefore, a judgment of acquittal, at a minimum, should be entered as to that count.

We note, however, that the language, "if the sexual act occurred in the special maritime and territorial jurisdiction of the United States," was removed from § 2423(b) but was still included in the definition of "illicit sexual conduct" in § 2423(f).

14

and further the work of the Center, and to bring back donations and supplies collected in the United States to the Center.  Carter denied traveling to Haiti for the purpose of engaging in sexual acts with minors.

During direct examination, Carter testified that he lived in Egypt for several years beginning in 1986.  In Egypt, Carter lived in a house with a young boy, whose mother Carter paid so that the boy would live with him and perform certain tasks.  Carter further testified that he was arrested by Egyptian law enforcement, who falsely accused him of being a spy.  Defense counsel asked whether "there any allegations of sexual impropriety made against" Carter.  Carter replied, "Not that I know of at the time."  Nonetheless, according to Carter, an investigation commenced, and Carter was eventually deported from Egypt and sent back to the United States.  On cross-examination, Carter denied that he was arrested on child molestation charges.

After the defense rested, the government prepared to call a rebuttal witness and sought to introduce evidence that would impeach Carter's testimony and prove that Carter knew that he had been arrested on suspicion of child molestation. Specifically, the government sought to admit into evidence Exhibit 105, a cable sent between State Department employees in February 1990, which documented Carter's arrest in Egypt.  The cable contained two sections.  The first section resembled a form, with more than 20 lines of information, including "Name,"

15

"Sex," "DPOB" (date and place of birth), "Date and place of arrest," "Arrest condition," and "Charges."  The second section included comments made by State Department officials, including references to statements made by Carter and an assessment of the State Department's investigation into his arrest.

The government contended that the State Department, including its Embassy in Egypt, had a policy of making a record in this form of any arrest of an American citizen in a foreign country.  Accordingly, the government argued that the cable was admissible as a business record, pursuant to Federal Rule of Evidence 803(6), and alternatively as a public record, pursuant to Rule 803(8).

Carter objected to the admissibility of the cable on hearsay and Confrontation Clause grounds.  Carter objected both to the admissibility of the cable itself, and more specifically to the admissibility of "the law enforcement activity of the Egyptian police and the Egyptian Government" that was recorded on the first section of cable.  Carter contended that his arrest information should be excluded because such a report constituted hearsay from an Egyptian official, rather than information to which the State Department employee who filled out the form had personal knowledge.

After hearing arguments, the district court stated that it was impossible to know whether the statements attributed to Carter in the comments section of the cable were made by Carter to the Egyptian authorities, and that the State

16

Department official who filled out the form might not have had direct knowledge of the conversation.  The government agreed.  The district court then stated that "if [the comment portion] came from the arrest form, [its admission] would be a violation of the confrontation clause."

The district court further stated that "the pro forma portion of the form, which is name, date of birth, arrest charge, date of arrest, medical condition—all of that information is the information made in the normal course of affairs to be collected by both the [U.S.] Embassy, in this instance in Egypt, and to be transmitted back to the Department of State in Washington, DC, for the purpose of protecting the interests of the [U.S.] citizen abroad."  Accordingly, the district court admitted a redacted version of the cable, which included the arrest information in the first section, but did not include the second (comments) section with the references to Carter's statements.[6]

## G.    The Jury Instructions

The government submitted proposed jury instructions, which provided, in relevant part, as to Count One:

> Count 1 charges the Defendant, a United States citizen, with traveling in foreign commerce from the United States to Haiti for the purpose of engaging in any sexual act with a person under 18 years of age. . . .

---

[6]The district court also concluded, in the alternative, that the cable was admissible as a public record, pursuant to Rule 803(8).

17

The Defendant can be found guilty of Count 1 only if all the following facts are proved beyond a reasonable doubt:

(1) the Defendant is a United States citizen;

(2) the Defendant traveled in foreign commerce; and

(3) the Defendant traveled for the purpose of:

- engaging in a sexual act with a person who is under 16 years of age and is at least four years younger than the Defendant; or
- causing a person under 18 years of age to engage in a sexual act by threatening or placing that person in fear; or
- causing a person under 18 years of age to engage in a sexual act by using force against that person. . . .

The Government does not have to prove that the Defendant actually engaged in a sexual act with a person under 18 years of age, but must prove that he traveled with the intent to engage in such conduct.

Carter's counsel objected to the proposed instructions as to Count One on two grounds. First, he requested that the phrase "if that sexual act occurred in the special maritime and territorial jurisdiction of the United States" be added both to the introductory paragraph, after "18 years of age," and to the elements of the offense, as the fourth element. Second, Carter's counsel requested that the word "knowingly" be added before the word "traveled" in the elements of the crime.

The district court overruled Carter's objections and charged the jury as to Count One, in relevant part:

Count 1:  It's a federal crime for a United States citizen to knowingly travel in foreign commerce for the

18

purpose of engaging in a sexual act with a person under 18 years of age.

The Defendant can be found guilty of Count 1 only if all the following facts are proved beyond a reasonable doubt:

1: The Defendant is a United States citizen;

2: The Defendant traveled in foreign commerce; and,

3: The Defendant traveled for the purpose of engaging in a sexual act with a person who is under 16 years of age and is at least four years younger than the Defendant, or causing a person under 18 years of age to engage in a sexual act by threatening or placing that person in fear, or causing a person under 18 years of age to engage in a sexual act by using force against that person.

The term "sexual act" means contact between the penis and the vulva or the penis and the anus involving penetration, however slight; or contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; or the penetration, however slight, of another person's anal or genital opening by a hand, finger or any object with an intent to abuse, humiliate, harass or degrade the person or arouse or gratify the sexual desires of the Defendant or any other person; or an intentional touching, not through the clothing, of the genitalia of a person younger than 16 years old with the intent to abuse, humiliate, harass or degrade the person or arouse or gratify the sexual desire of the Defendant or any other person. . . .

The Government does not have to prove that the Defendant actually engaged in a sexual act with a person under 18 years of age, but must prove that he traveled with the intent to engage in such conduct. Proof of the Defendant's intent may be established by either direct or circumstantial evidence.

19

> The Government does not have to show that the sexual act is illegal in the country to which the Defendant traveled.

The district court did not specify that the jury must find that the sexual act, which was the defendant's purpose, would have been illegal if it occurred in the special maritime or territorial jurisdiction of the United States.  Rather, the district court defined "sexual act" according to the meaning given to that term by 18 U.S.C. § 2246.  Carter did not object to the district court's definition of "sexual act" in its jury instructions for Count One.

As to the jury instructions for Counts Two through Five, Carter made only one objection, which was about certain evidence and was sustained.[7]

## H.    Guilty Verdict and Sentencing

On February 28, 2013, the jury found Carter guilty on all counts.  After trial, Carter filed a Rule 29(c) motion for judgment of acquittal and a Rule 33 motion for a new trial.  See Fed. R. Crim. P. 29 and 33.  The district court denied both motions, and sentenced Carter to 1,980 months' imprisonment.[8]

Carter timely appealed.

---

[7]Carter objected to a paragraph in the  proposed jury instructions regarding the difference between direct and circumstantial evidence.  That objection, which was sustained, is not at issue on appeal.

[8]The district court sentenced Carter to six consecutive terms: 180 months' imprisonment for Count One and 360 months' imprisonment each for Counts Two through Six.  On appeal, Carter challenges only his convictions and does not raise any sentencing issues.

## II. DISCUSSION

### A.    Denial of Carter's Rule 29 Motions on Count One

On appeal, Carter's first argument is that the district court erred in denying his motions for judgment of acquittal on Count One.[9]  Carter contends that the version of the § 2423(b) statute applicable to Count One, as well as the language used in Count One, required the government to prove that the sexual act itself occurred in the special maritime and territorial jurisdiction of the United States, and the government did not prove this fact.[10]

It is clear from a review of the § 2423(b) statute and the indictment that the government was not required to prove that the defendant actually committed any sexual act whatsoever, let alone prove that the defendant committed a sexual act in the special maritime and territorial jurisdiction of the United States.  See United States v. Bredimus, 352 F.3d 200, 210 (5th Cir. 2003) ("We find . . . that the criminal act under § 2423(b) is foreign travel with criminal intent; and thus, the offense is complete even if the illicit intent is never realized."); see also United States v. Vang, 128 F.3d 1065, 1069 (7th Cir. 1997) ("In 1994, Congress created

---

[9]Carter does not appeal the district court's denial of his motion for judgment of acquittal on any other count.

[10]We review de novo a district court's denial of a motion for judgment of acquittal on sufficiency of the evidence grounds and look at the record in the light most favorable to the jury verdict, drawing all reasonable inferences and credibility choices in its favor.  United States v. Reeves, 742 F.3d 487, 497 (11th Cir. 2014).  We also review de novo the district court's interpretation of a statute.  United States v. Murrell, 368 F.3d 1283, 1285 (11th Cir. 2004).

§ 2423(b) in a further attempt to expand the protection of minors.  The new statute punishes mere 'travel' in interstate commerce . . . .").

The phrase Carter highlights—"if the sexual act occurred in the special maritime and territorial jurisdiction of the United States"—does not limit the territorial or jurisdictional reach of the statute.  Rather, it defines what types of sexual acts a defendant must have traveled for the purpose of committing to be guilty of the crime: those sexual acts that would be unlawful if they occurred in the special maritime and territorial jurisdiction of the United States.

Carter's argument that Count One should have been dismissed because the government failed to produce evidence that he engaged in any sexual acts in the special maritime or territorial jurisdiction of the United States therefore lacks merit.  That the defendant committed a sexual act in a particular jurisdiction simply is not an element of a violation of § 2423(b).  Accordingly, the district court properly denied Carter's motions for judgment of acquittal as to Count One.

**B.    Overruling of Carter's Objections to the Jury Instructions**

On appeal, Carter's second argument is that the district court erred in its jury instructions regarding the § 2423(b) offenses in Counts One through Five.[11]

---

[11]We review de novo the legal correctness of jury instructions.  United States v. Gibson, 708 F.3d 1256, 1275 (11th Cir.), cert. denied, 571 U.S. ___, 134 S. Ct. 342 (2013).  We defer to the district court on questions of phrasing absent an abuse of discretion.  Frank, 599 F.3d at 1236.  The district court's jury instructions are subject to harmless error review.  United States v. House, 684 F.3d 1173, 1196 (11th Cir. 2012), cert. denied, 568 U.S. ___, 133 S. Ct. 1633 (2013).

1.    Count One: Location of the Sexual Acts

Carter first argues that the district court erred by failing to include in the instruction for Count One "the element requiring the jury to find whether 'the sexual act occurred in the special maritime and territorial jurisdiction of the United States.'"  For the reasons explained in Part II.A, Carter's argument lacks merit. Neither the commission of the sexual act, nor its occurrence in a particular jurisdiction, was an element of the § 2423(b) offense in Count One.[12]

2.    Counts One through Five: Whether "<u>Knowing</u> Travel in Foreign Commerce" is an Element

Next, in his brief on appeal, Carter contends that the term "knowingly" should have been included in the elements under Counts One through Five "because § 2423(b) is a specific intent crime and[/]or is a crime requiring intent that requires travel[ing] with a purpose."

As an initial matter, where a defendant agrees to the "court's proposed instructions, the doctrine of invited error applies, meaning that review is waived even if plain error would result."  <u>United States v. Frank</u>, 599 F.3d 1221, 1240 (11th Cir. 2010).  Because Carter's defense counsel at trial agreed to the jury instructions as to Counts Two through Five after the district court sustained his only objection to those instructions, Carter has waived his right to appeal the jury

---

[12]While Carter does not raise this issue as to Counts Two through Five, we note those counts also do not require the government to prove that the defendant engaged in illicit sexual conduct in a particular location.

23

instructions as to Counts Two through Five, even if the instructions constituted plain error.

In any event, neither version of § 2423(b) has a "knowing" requirement in the statute.  In reaching this conclusion and in construing this criminal statute, "we begin with the plain language; where the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said."  United States v. Browne, 505 F.3d 1229, 1250 (11th Cir. 2007) (quotation marks omitted).

Notably, the language of the § 2423(b) statute, quoted above, did not include any reference to "knowing[ ] travel[ ] in foreign commerce" or any other use of the word "knowing" or "knowingly."  Similarly, the current version of § 2423(b) does not include any use of the word "knowing" or "knowingly."  See 18 U.S.C. § 2423(b) (2012) ("A . . . United States citizen . . . who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.").[13]

---

[13]By contrast, an adjacent subsection of § 2423 does include a "knowing" requirement. See 18 U.S.C. § 2423(a) ("A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce . . . shall be fined under this title and imprisoned not less than 10 years or for life." (emphasis added)).

We are mindful that the district court included the phrase "knowing[ ] travel in foreign commerce" in the introductory paragraph of the jury instructions[14] and that the phrase likewise appears in the introductory paragraph of the current pattern charge for a violation of § 2423(b). See Eleventh Circuit Pattern Jury Instructions (Criminal Cases) at 534-35. However, this Circuit's pattern instructions, while a valuable resource, are not binding law. See United States v. Dohan, 508 F.3d 989, 994 (11th Cir. 2007).

And Congress has chosen not to include a "knowing" requirement in § 2423(b). Neither the version of § 2423(b) in effect at the time of the charged conduct, nor any later version, includes the term "knowing" or "knowingly." See 18 U.S.C § 2423(b) (2000); id. § 2423(b) (2010). Rather, the mens rea required by the § 2423(b) statute is that the individual travel for the purpose of committing certain acts. See United States v. Tykarsky, 446 F.3d 458, 471 (3d Cir. 2006). Put simply, "knowing travel in foreign commerce" is not now, and was not before, an element of a § 2423(b) offense.

Carter has offered no reason why we should deviate from the plain language of § 2423(b) and insert an element that Congress did not include when drafting that statute. Rather, Carter merely lists two decisions, which he claims "reference

---

[14]Although the district court likewise included that phrase in its introductory paragraph to the jury instructions for Counts One through Five, it did not include it when specifying the elements of a § 2423(b) offense.

25

§ 2423(b) as 'knowingly' [sic]." The first, United States v. Vance, does not, in fact, refer to the completed offense as including a knowledge requirement. See 494 F.3d 985 (11th Cir. 2007), superseded by statute on other grounds as recognized in United States v. Jerchower, 631 F.3d 1181, 1186 (11th Cir. 2011). In Vance, this Court quoted a federal grand jury indictment that charged the defendant with the inchoate crime of "knowingly attempting to travel in foreign commerce," in violation of § 2423(b) and (e). Vance, 494 F.3d at 990 (emphasis added and brackets omitted). The word "knowingly" in the indictment thus modifies "attempting," not "travel." At no point did this Court indicate that the statute required knowing travel. See generally id.

The second decision Carter identifies, United States v. Robertson, includes only two passing references to the defendant pleading guilty to "knowingly traveling in interstate commerce for the purpose of engaging in a sexual act with" a minor. 350 F.3d 1109, 1111, 1114 (10th Cir. 2003). In that case, the defendant did not challenge his conviction, the sufficiency of the evidence, the elements of the crime, or anything else that would have required the court to consider whether "knowing[ ] travel[ ]" was an element of the offense. See generally id. Rather, the only issue on appeal was the application of a sentencing guidelines enhancement. See id. at 1112. These two passing references do not persuade us that we should

ignore the plain meaning of the § 2423(b) statute and add an element to the offense created by Congress.

Accordingly, the district court's jury instructions were legally correct, and its phrasing did not constitute an abuse of discretion, much less reversible error.[15]

## C.    Denial of Carter's Motions for Foreign Witness Depositions

Next, Carter argues that the district court erred in denying his motions to take five foreign witness depositions during the trial.  Carter contends that "the five witnesses' [sic] were going to testify to a material fact that was allegedly in dispute within Counts 1-6," and "would have supported and[/]or corroborated Carter's testimony and the theory of the defense that he did not travel to Haiti to engage in sexual acts with persons under the age of eighteen, but instead to engage in acts of good will for the Haitian community."  Carter also argues that "the proferred witnesses' testimony would have shown that there were no signs of sexual abuse" at the Center.  Finally, Carter contends that the error was per se reversible because it amounted to a "deprivation of Carter's fundamental right to a fair trial."[16]

---

[15]Even if we were persuaded that the § 2423(b) statute requires "<u>knowing</u> travel in foreign commerce," we nonetheless conclude that any error was harmless.  Carter himself testified that he traveled from the United States to Haiti on October 2, 2001 (albeit allegedly only to bring funds he raised from the United States to the Center).  Therefore, even if the government bears the burden under § 2423(b) to prove that Carter's overseas travel to Haiti was done knowingly, Carter's own testimony proves that it was.

And abundant evidence of Carter's sexual conduct with minors in Haiti was more than sufficient to support the jury's verdict that Carter's travel to Haiti was in foreign commerce for the purpose of committing sexual acts with minors.

District courts may grant a party's request to depose a prospective witness "because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1). The moving party bears the burden of showing that exceptional circumstances exist to warrant the deposition. Drogoul, 1 F.3d at 1552. "[T]hree factors guide the exceptional circumstances analysis: whether (1) the witness is unavailable to testify at trial; (2) injustice will result because testimony material to the movant's case will be absent; and (3) countervailing factors render taking the deposition unjust to the nonmoving party." United States v. Ramos, 45 F.3d 1519, 1522-23 (11th Cir. 1995). "The principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that testimony to the case." Drogoul, 1 F.3d at 1552. This Court has reversed a district court's denial of a motion for foreign witness depositions where the expected testimony was "highly material to the case," going to "the very heart of the government's allegations," and the countervailing concerns were premature and speculative. Id. at 1553-56.

Although offered separately, Carter's proffers of the witnesses' testimony demonstrate that all five witnesses would have offered testimony relating to only

---

[16]We review for abuse of discretion a district court's decision to refuse to allow a party to take a deposition in a criminal case. United States v. Thomas, 62 F.3d 1332, 1340 (11th Cir. 1995). Depositions are generally disfavored in criminal cases, and foreign depositions, in particular, are considered "suspect" and are "not favored." United States v. Drogoul, 1 F.3d 1546, 1551 (11th Cir. 1993).

two points: (1) that the witnesses observed Carter performing good works in the community, and (2) that the witnesses saw "no signs" of sexual abuse of children. Carter contends that this testimony would have helped him establish that he traveled in foreign commerce for the purpose of helping the community, not for the purpose of engaging in sexual acts with minors.

First, to the extent that Carter sought to introduce testimony that he performed good deeds in the community, such testimony would have been cumulative. Here, other witnesses, including some of the victims, testified that Carter operated the clinic for the community; that the clinic provided free services; and that children whose families could not afford to support them received clothing, food, and education at the Center.[17] Accordingly, the district court did not abuse its discretion by excluding this deposition testimony. See United States v. Blackman, 66 F.3d 1572, 1578 (11th Cir. 1995) (affirming denial of motion to depose witnesses where other witnesses "testified about the events" and "the defendants' claims . . . were fully developed").

Second, to the extent that Carter sought to introduce testimony from witnesses that they saw no signs of abuse at the Center, Carter has shown no error in this regard either. Carter did not proffer that any of these witnesses would be

---

[17]Carter also indicates that he sought to introduce evidence from the foreign witnesses that the children at the Center were "well treated." However, such evidence would not be material to the central issue in this case, which is whether he traveled in interstate commerce for the purpose of engaging in sexual acts with children. See Ramos, 45 F.3d at 1523.

expert witnesses.[18]  Without Carter proffering any expertise by the witnesses in the identification of hidden sexual abuse, the district court could not have admitted their testimony that they saw "no signs" of abuse for the purpose of establishing that the abuse did not occur.  See United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (observing that only expert witnesses may give their opinion about matters on which they do not have first-hand knowledge).

Accordingly, the district court at best could have admitted only testimony that the witnesses did not directly observe abuse during their limited interactions with Carter.  But the fact that certain witnesses did not see children being abused during particular times when they interacted with Carter does nothing to contradict the testimony of the victims who claimed Carter forced them, as children, to engage in sexual acts with him inside the Center when away from other adults. Thus, the district court did not abuse its discretion by excluding this deposition testimony.  Cf. Ramos, 45 F.3d at 1523 (stating that the absence of "testimony material to the movant's case" is a factor in the exceptional-circumstance analysis under Rule 15).

Because the foreign witnesses' proffered testimony consisted only of cumulative, immaterial, or inadmissible evidence, Carter failed to establish the

---

[18]Even though Jensen had been a police investigator, Carter did not proffer evidence that she was an expert at identifying sexual abuse, and defense counsel specifically stated that she "is not an expert but is a fact witness."

30

second factor in the exceptional-circumstances test under Rule 15, that "injustice will result because testimony material to the movant's case will be absent." See Ramos, 45 F.3d at 1523.

## D.    Admission of Exhibit 105

On appeal, Carter also argues that the district court erred in admitting Exhibit 105, a partially-redacted State Department Cable reporting Carter's 1990 arrest in Cairo, Egypt, for alleged child molestation. Carter contends that "the court erred in admitting Exhibit 105 with the fact that Carter had been arrested for child molestation in Egypt in 1990 as the government informed the Court that it probably came from the arresting authorities and the Court acknowledged that is a violation of the right to confrontation." Carter argues that the admission of Exhibit 105 constituted "per se reversible error."[19]

We conclude that Carter has abandoned arguments necessary for him to establish that the district court erred in its hearsay ruling or in its Confrontation Clause ruling, and his claims as to each therefore fail.

---

[19]A review of the record reveals that Carter's claim that "the government informed the Court that [the information regarding the arrest charge] probably came from the arresting authorities" lacks merit. The government admitted that the second section, containing comments, might have included information that came from the arresting authorities. But that section was not admitted as evidence and cannot form the basis of Carter's argument.

Rather, the only section admitted into evidence was the first section, which included the allegation that Carter was arrested on child molestation charges. The district concluded that the information included in the first section "is the information made in the normal course of affairs to be collected by both the US Embassy, in this instance in Egypt, and to be transmitted back to the Department of State in Washington, DC, for the purpose of protecting the interests of the US citizen abroad." Regardless, for the reasons discussed infra, we reject Carter's arguments.

31

With regard to hearsay, the primary ground upon which the district court admitted the cable was that the cable constituted an admissible business record, pursuant to Rule 803(6).  But on appeal, Carter's brief has failed to make any argument regarding—or even any reference to—the district court's Rule 803(6) determination.[20]  Accordingly, we conclude that he has abandoned any argument that the district court erred by admitting the cable pursuant to Rule 803(6).  See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 972 (11th Cir. 2008) ("It is well settled in this circuit that an argument not included in the appellant's opening brief is deemed abandoned.").  Because he has "abandoned an issue on which he had to prevail in order to obtain reversal" on hearsay grounds, his hearsay argument fails.  See United States v. King, 751 F.3d 1268, 1277 (11th Cir.), cert. denied, 135 S. Ct. 389 (2014).

Turning to Carter's Confrontation Clause argument, we first note the Confrontation Clause prohibits the admission of a declarant's out-of-court testimonial statements unless the declarant was unavailable and the defendant had a previous opportunity to cross-examine the declarant.  Crawford v. Washington, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365 (2004).  However, the Confrontation Clause does not prohibit the admission of non-testimonial statements.  See Crawford, 541 U.S. at 68, 124 S. Ct. at 1374 ("Where nontestimonial hearsay is at

---

[20]On appeal, Carter filed an opening brief but chose not to file a reply brief.

issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law."). In his brief, Carter does not argue that the cable or the record of his arrest in Egypt were testimonial. Accordingly, he has again abandoned a necessary issue in his larger Confrontation Clause argument, which therefore fails. See United States v. Mathis, 767 F.3d 1264, 1278 (11th Cir. 2014) ("[The defendant] does not argue on appeal that [the out-of-court statements] were testimonial and he has 'therefore abandoned an issue on which he had to prevail in order to obtain reversal.'" (quoting King, 751 F.3d at 1277)).

Even if Carter had preserved the issues, his hearsay and Confrontation Clause arguments would be subject to harmless error review. See United States v. Magluta, 418 F.3d 1166, 1179-80 (11th Cir. 2005) (hearsay); United States v. Jones, 601 F.3d 1247, 1264 (11th Cir. 2010) (Confrontation Clause) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438 (1986)).

Hearsay errors are harmless "if, viewing the proceedings in their entirety, a court determines that the error did not affect the verdict, or had but very slight effect." Magluta, 418 F.3d at 1180 (quotation marks omitted). "For violations of the Confrontation Clause, harmless error occurs where it is clear beyond a reasonable doubt that the error complained of did not contribute to the verdict

obtained." United States v. Caraballo, 595 F.3d 1214, 1229 (11th Cir. 2010)

(quotation marks omitted).

In this case, even if the admission of the cable was error, it was harmless

under both standards.  The evidence that Carter challenges was merely collateral to

the offenses with which Carter was charged.  Indeed, the government introduced

the evidence for the purpose of impeaching Carter's testimony, not for the purpose

of establishing that he engaged in the conduct referenced on the State Department

cable.  Furthermore, the evidence of Carter's guilt on all six counts was

overwhelming.  Accordingly, we readily conclude that any error regarding the

admission of the State Department cable was harmless and is not grounds for

reversal.

### E.    Limitation on the Cross-Examination of Witness G.S.

Carter contends that the district court erred in prohibiting defense counsel

from questioning a government's witness, G.S., about prior statements that were

allegedly inconsistent with his trial testimony.  Carter argues that the district court

erred by prohibiting Carter "from exploring the essence of the case and the

witness' credibility regarding that [sic] Carter had not engaged in sexual

misconduct."[21]

---

[21]We review a district court's decision to limit the scope of cross-examination for "clear abuse of discretion."  United States v. Pacchioli, 718 F.3d 1294, 1303 (11th Cir.), cert. denied, 134 S. Ct. 804 (2013).

A district court has wide latitude to control the cross-examination of witnesses, subject to the guarantee of the Confrontation Clause. United States v. Maxwell, 579 F.3d 1282, 1295 (11th Cir. 2009). The Confrontation Clause guarantees a criminal defendant the right to impeach adverse witnesses through cross-examination. United States v. Barrington, 648 F.3d 1178, 1187-88 (11th Cir. 2011). "A defendant's confrontation rights are satisfied when the cross-examination permitted exposes the jury to facts sufficient to evaluate the credibility of the witness and enables defense counsel to establish a record from which he properly can argue why the witness is less than reliable." United States v. Baptista-Rodriguez, 17 F.3d 1354, 1371 (11th Cir. 1994). However, "a witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own." United States v. Saget, 991 F.2d 702, 710 (11th Cir. 1993).

In this case, Carter's defense counsel sought to cross-examine witness G.S. regarding statements he allegedly made to law enforcement officers in his first meeting with them. Specifically, defense counsel referred to the notes from a May 22, 2011 law-enforcement interview with G.S., and proffered that he sought to impeach G.S. based on G.S.'s alleged statement in that interview that Carter "never did anything to me because he never did anything to me." The district court sustained the government's objections to defense counsel's questions on the

35

ground that counsel was attempting to impeach the witness with notes from a law enforcement officer that did not constitute a statement of the witness.

Even if the witness's alleged prior statement to officers constituted a proper basis for impeachment, Carter's argument would nonetheless fail. Assuming that the district court limited the cross-examination in error, it did not infringe Carter's Sixth Amendment right to cross-examination because defense counsel nonetheless elicited ample evidence to enable the jury to assess G.S.'s credibility. After abandoning the line of questioning regarding the May 22, 2011 interview with law enforcement, defense counsel moved on to other prior statements that were allegedly inconsistent. During this line of questioning, defense counsel continued asking G.S. about his statements to law enforcement, and the district court overruled multiple government objections, on hearsay grounds, to Carter's attempts to impeach G.S. Importantly, too, G.S. admitted that, during a November 30, 2011 interview, he denied participating in sexual activity with Carter, even though he testified at trial that he had been forced to masturbate Carter.

Ultimately then, through cross-examination, the defendant was able to make clear to the jury that when questioned previously on this subject matter, witness G.S. had never indicated sexual molestation until two days before the trial. So, even if some of the district court's rulings sustaining governmental objections may have been erroneous, any errors were mitigated by later cross-examination that

36

elicited this information before the jury.  Accordingly, Carter's Confrontation

Clause rights were not infringed because the district court permitted impeachment

of G.S. that was "sufficient to evaluate the credibility of the witness and enable[d]

defense counsel to establish a record from which he properly can argue why" G.S.

was "less than reliable."  See Baptista-Rodriguez, 17 F.3d at 1371.

### F.    Carter's Motion for Mistrial

Carter also contends that the district court "erred in denying Carter's motion

for mistrial" when a witness "testified that Carter committed sexual abuse in

Jamaica."  Carter's argument on this point is only two sentences long:

> Carter moved for mistrial when [witness J.D.J.] stated
> Carter committed sexual abuse in Jamaica when such
> notice was not provided to the defense during discovery
> and which motion was denied by the District Court.  As
> stated above, this matter concerns credibility findings
> between the government's witnesses who alleged sexual
> abuse and Carter who denied the allegations and
> therefore this error is not harmless.

(Citation omitted).

Carter cites no case law and makes no argument explaining why the district

court's denial of his motion for a mistrial was in error.  Accordingly, he has

abandoned this issue.  See Denney v. City of Albany, 247 F.3d 1172, 1182 (11th

Cir. 2001) (deeming an issue abandoned where the plaintiffs made "a single

reference" in their brief to the issue, "d[id] not discuss the district court's analysis

37

on that issue," and "d[id] not make any legal or factual argument" as to why the district court's decision was in error).

## G.    The Testimony of Witness I.M.

On appeal, Carter also argues that the district court erred in admitting a witness's testimony over Carter's objection on hearsay grounds. The witness, I.M., testified that Carter sexually touched and abused him in the 1970s when I.M. was 12 years old, but that he first reported the abuse to police in 2011 after his brother contacted him.

Once again, Carter's argument consists of only two sentences:

> The District Court overruled Carter's hearsay objection when [I.M.] testified his brother contacted him first about Carter's alleged sexual abuse. As stated above, this matter concerns credibility findings between the government's witnesses who alleged sexual abuse and Carter who denied the allegations and therefore this error is not harmless.

(Citation omitted).

And, once again, we conclude that Carter has abandoned the issue by failing to present any factual or legal argument challenging the district court's determination. See Denney, 247 F.3d at 1182.

## H.    Alleged Cumulative Error

Carter's final argument on appeal is that the "cumulative error doctrine requires reversal of Carter's convictions even if this court finds that each individual error is insufficient for reversal."

We disagree.

Carter has not established a single error, let alone the aggregation of "many errors" that may require for a reversal where the individual errors do not.  See United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005).  Accordingly, his argument under the cumulative error doctrine fails.

### III. CONCLUSION

For the foregoing reasons, we affirm Carter's convictions for five counts of traveling in foreign commerce for the purpose of engaging in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b), and one count of attempting to travel in foreign commerce for the purpose of engaging in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(e).

**AFFIRMED.**