[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12147

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DIEGO FAGUNDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:20-cr-00085-LSC-KFP-7

_____

Before JILL PRYOR, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

Diego Fagundez appeals his conviction and sentence for conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846. Fagundez asserts the district court erred by (1) admitting text messages and phone calls between Ryan Nance and Eduardo "Shorty" Cervantes as statements of Fagundez's co-conspirators; (2) admitting statements between Nance and Cervantes that were made after Nance had been arrested and agreed to cooperate with law enforcement; and (3) finding that Fagundez was responsible for a total of 5.963 kilograms of methamphetamine. After review, we affirm Fagundez's conviction and sentence.

## I. DISCUSSION

### A. Admission of text messages and phone calls

Generally, a statement made by an out-of-court witness that is offered into evidence to prove the truth of the matter asserted in the statement is inadmissible hearsay. *United States v. Holland*, 117 F.4th 1352, 1356 (11th Cir. 2024); Fed. R. Evid. 801(c), 802. Rule 801(d)(2)(E) creates an exception if a "statement is offered against [a defendant]" and "was made by the [defendant's] coconspirator during and in furtherance of the conspiracy." To introduce a statement under this exception, "the government must prove by a preponderance of the evidence that (1) a conspiracy existed, (2) the conspiracy included the declarant and the defendant . . . and (3) the

statement was made during the course of and in furtherance of the conspiracy." *United States v. Underwood*, 446 F.3d 1340, 1345-46 (11th Cir. 2006). For purposes of Rule 801(d)(2)(E), the word "conspiracy" means "an arrangement to work together toward a shared goal." *Holland*, 117 F.4th at 1356.

In determining whether a statement was in furtherance of a conspiracy, we apply a liberal standard. *United States v. Wenxia Man*, 891 F.3d 1253, 1271 (11th Cir. 2018). In making the initial finding, a district court is permitted to consider any nonprivileged evidence, including the statement itself. *Id.* Rule 801(d)(2) expressly provides that, although the statement at issue "must be considered" in determining whether a conspiracy existed, the statement "does not by itself establish . . . the existence of the conspiracy or participation in it . . . ." The district court may conditionally admit the statement in advance of the government's introduction of evidence establishing the three requirements of Rule 801(d)(2)(E) have been met. *Wenxia Man*, 891 F.3d at 1271.

The district court did not abuse its discretion by admitting the statements because the Government established by a preponderance of the evidence a conspiracy existed between Fagundez, Nance, and Cervantes and the statements in question were made during the course of and in furtherance of the conspiracy. *See Holland*, 117 F.4th at 1355 (reviewing a district court's rulings regarding the admissibility of co-conspirator statements for an abuse of discretion). Nance testified he frequently bought methamphetamine from Cervantes, who used Fagundez as an intermediary to

facilitate the transactions.  Officer James Steedle testified he observed Nance arrive at Fagundez's residence, observed an individual place a box into Nance's car, and later arrested Fagundez at the residence.  Agent Ryan McCormick testified he arrested Nance and found the box in Nance's car contained methamphetamine.  The Government introduced numerous messages and calls in which Nance and Cervantes made frequent references to "Diego."  Nance testified the phone calls and text messages involved the discussion of buying and selling methamphetamine, and he testified their frequent references to "Diego" during those discussions were referring to Fagundez.  He also testified the individual who placed the methamphetamine into his car on December 13 was Fagundez.

Accordingly, because the Government established through the testimony of multiple witnesses, as well as the calls and messages between Nance and Cervantes, that Fagundez, Nance, and Cervantes were involved in a conspiracy to buy and sell methamphetamine, the district court did not abuse its discretion in admitting the statements of Fagundez's co-conspirators.

B. Admission of statements after Nance's arrest

A violation of the Confrontation Clause is harmless if it is clear beyond a reasonable doubt the error did not affect the verdict. *United States v. Carter*, 776 F.3d 1309, 1328 (11th Cir. 2015). Non-constitutional hearsay errors, however, are harmless if a reviewing court determines the error did not affect or had only very slight effect on the verdict. *Id*.  The admission of out-of-court statements made by a declarant who testifies at trial does not violate the

Confrontation Clause.  *See United States v. Curbelo*, 726 F.3d 1260, 1274-76 (11th Cir. 2013).

There can be no conspiracy between one individual and a government informant who secretly intends to frustrate the conspiracy, but a government informant can serve as a connecting link between two or more conspirators.  *Wenxia Man*, 891 F.3d at 1265. Where there is an ongoing conspiracy between participants, the arrest of and subsequent cooperation with authorities by one of the participants does not preclude the continuing existence of the conspiracy between the other co-conspirators.  *United States v. Casamayor*, 837 F.2d 1509, 1513 (11th Cir. 1988).

To the extent the Exhibit 7 phone call[1] contained statements by Cervantes, the district court did not abuse its discretion in admitting the call because the evidence established that Cervantes and Fagundez were involved in an ongoing conspiracy.  Nance's arrest and cooperation with authorities did not end that conspiracy and Cervantes' statements were made during and in furtherance of the conspiracy.  Cervantes' statements indicate that an ongoing

---

[1] While Fagundez states "Government Exhibit 9 was a call played for the jury that took place after Nance had been arrested," Exhibit 9 was the Government's laboratory report detailing analysis of the methamphetamine.  Fagundez includes a citation to pages 72 and 73 of the trial transcript.  Those pages reflect the Government played a phone call for the jury in which Nance informed Cervantes that Nance "[couldn't] come when [he was] supposed to." This indicates the phone call that was played was Exhibit 7, in which Nance told Cervantes that he had "a family emergency," and promised to "come with it tomorrow."

conspiracy still existed between him and Fagundez, and the fact that Nance had begun cooperating with law enforcement did not end the conspiracy. *See Casamayor¸* 837 F.2d at 1513.

To the extent the Exhibit 7 phone call contained statements by Nance, and to the extent Nance testified regarding post-arrest statements made to law enforcement, even if all of those statements constituted impermissible hearsay, the admission of those statements against Fagundez was harmless. On the call, Nance tells Cervantes he had been delayed in bringing money to him and he would bring Cervantes the money the next day. Nance's testimony only briefly referenced statements made to law enforcement after his arrest—he testified he told agents that (1) he was supposed to let someone know he had "made it back," and (2) he told agents "what [he] knew about the investigation." Even without the statements in Exhibit 7 or Nance's testimony regarding post-arrest statements to law enforcement, (1) the Government introduced voluminous calls and messages between Nance and Cervantes; (2) Nance testified those calls and messages were discussions regarding the buying and selling of methamphetamine—many of which referenced "Diego;" (3) Nance testified he received methamphetamine from Fagundez, and he identified Fagundez in the courtroom; (4) Officer Steedle testified he observed Nance arrive at Fagundez's house, observed someone place a box in Nance's trunk, and later apprehended Fagundez at that house; and (5) Agent McCormick testified that when he arrested Nance, he found the box in Nance's car contained methamphetamine.

Because Nance testified at trial, those statements were not barred by the Confrontation Clause, and thus Fagundez would have to show the admission of those statements affected the verdict in order to constitute reversible error. *See Curbelo*, 726 F.3d at 1274-76; *Carter*, 776 F.3d at 1328. Considering the substantial amount of other evidence introduced by the Government, Fagundez has not shown the admission of any of Nance's statements in the Exhibit 7 phone call or Nance's cursory testimony regarding post-arrest statements to law enforcement affected the jury's verdict. *See Carter*¸ 776 F.3d at 1328.

## C. Drug Quantity

When the amount of drugs that was seized does not reflect the scale of the offense, the district court must instead approximate the quantity of drugs attributable to the defendant. *United States v. Dixon*, 901 F.3d 1322, 1349 (11th Cir. 2018). Such a determination can be based on fair, accurate, and conservative estimates, but it cannot be based on calculations that are merely speculative. *Id.* When sentencing a defendant who was a member of jointly undertaken criminal activity, the district court may consider the conduct of others that was in furtherance of the jointly undertaken activity and was reasonably foreseeable in connection with that activity. *Id.*

The district court did not clearly err in determining Fagundez was responsible for 5.963 kilograms of methamphetamine. *See id.* at 1347 (reviewing for clear error a district court's factual finding of the drug quantity attributable to a defendant). Fagundez asserts Nance testified he received methamphetamine from Fagundez on

only two occasions and he did not meet Fagundez until December 2019, but those arguments are contradicted by the record. Nance testified he first received a kilogram of methamphetamine from Fagundez "four to five months" prior to Nance's arrest in December 2019, and he testified he then bought "a kilo or two a week" of methamphetamine from Cervantes "for about three to four months," usually meeting with Fagundez to pay for and receive the drugs. Additionally, the calls and messages between Nance and Cervantes frequently referenced "Diego." Thus, Nance's testimony, along with calls and messages between Nance and Cervantes, established Fagundez frequently served as an intermediary for Cervantes' and Nance's weekly drug deals over a span of several months. As Fagundez concedes he provided 3.963 kilograms of methamphetamine to Nance on December 13, the district court's finding Fagundez was responsible for only 2 additional kilograms was a conservative estimate considering Nance's testimony he bought "a kilo or two" a week for "four to five months" after first meeting Fagundez. *See Dixon*, 901 F.3d at 1349.

Because the district court's finding regarding the drug amount for which Fagundez was responsible was a conservative estimate based on the evidence introduced at trial, the district court did not clearly err in determining Fagundez was responsible for 5.963 kilograms of methamphetamine.

### III. CONCLUSION

Accordingly, we affirm Fagundez's conviction and sentence.

**AFFIRMED**.