[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10144
Non-Argument Calendar

_____

D.C. Docket No. 0:17-cr-60123-WPD-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARMANDO REYES-GARCIA,
SANTIAGO ORTEGA-MONTEZ,
GABRIEL CRUZ,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(December 18, 2019)

Before JORDAN, JILL PRYOR, and TJOFLAT, Circuit Judges.

PER CURIAM:

Armando Reyes-Garcia, Santiago Ortega-Montez, and Gabriel Cruz appeal their convictions for conspiracy to possess with intent to distribute cocaine in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70503(a)(1), 70506(b), and 70507(a). The defendants challenge several of the district court's evidentiary rulings. Cruz also challenges the sufficiency of the evidence supporting his conviction. After careful review, we affirm the defendants' convictions.

## I.    BACKGROUND

We present only the facts elicited at trial that are relevant to the issues on appeal, which are the defendants' challenges to the testimony of government expert Derek Sousa and several government lay witnesses and Cruz's challenge to the sufficiency of the evidence supporting his conviction.

## A.    The Interdiction and Indictment

A federal grand jury in the Southern District of Florida returned an indictment charging Ortega-Montez, Reyes-Garcia, and Cruz, along with codefendants Raul Alberto Rengifo-Mendoza, Williams Alfredo Perea-Blandon, Martin Perea-Perlaza, and Isaias Garcia-Garcia, with conspiracy to possess with intent to distribute five or more kilograms of a mixture and substance containing cocaine while aboard a vessel subject to the jurisdiction of the United States, in

2

violation of 46 U.S.C. §§ 70503(a)(1), 70506(b), 70507(a), and 21 U.S.C. § 960(b)(1)(B).

The conspiracy began when Rengifo-Mendoza, Perea-Perlaza, and Perea-Blandon agreed to travel on Rengifo-Mendoza's boat from Colombia and transfer a cargo of cocaine to a boat coming from Mexico. They planned to refuel and transfer drugs to the boat coming from Mexico at a specific location saved on a GPS device. The three men left Colombia, but before they could meet up with the boat coming from Mexico, they were arrested by the Coast Guard. The Coast Guard searched Rengifo-Mendoza's boat and found 930 kilograms of cocaine, GPS devices, a phone, and radios.

The same day, the Coast Guard intercepted a second vessel, the boat that had departed from Mexico and was scheduled to receive the cocaine from Rengifo-Mendoza's boat. On the second vessel, Reyes-Garcia was captain, Ortega-Montez was copilot, and Cruz and Garcia-Garcia were assigned to "look around and to transfer gas." DE 269 at 160-65.[1] Ortega-Montez, Cruz, and Garcia-Garcia knew each other before getting on the vessel because they used to fish together. Reyes-Garcia advised his crew that, in the event they were caught by the Coast Guard, they should say they "were looking for some people, because

---

[1] All citations in the form "DE __" refer to the district court's docket entries.

3

back then some people had gotten lost in [Mexico]." *Id.* at 173.  Indeed, a group of Mexican fishermen had been lost at sea for about a week and a rescue effort was underway.  Reyes-Garcia communicated with Rengifo-Mendoza, Perea-Perlaza, and Perea-Blandon by radio and was informed that his boat was about 100 miles away from their boat before the interdiction.

When Reyes-Garcia, Ortega-Montez, Cruz, and Garcia-Garcia were interdicted by the Coast Guard, Reyes-Garcia identified himself as the master of the vessel and stated that the purpose of the voyage was to look for lost fishermen. The Coast Guard officers searched the vessel and found messages on a satellite phone indicating that the four men were going to meet up with someone.  The officers found 60 15-gallon jugs of gasoline, a significant amount of fuel considering the size of the boat, as well as some empty fuel jugs.  They found no cocaine on the vessel.

The Coast Guard officers arrested Garcia-Garcia, Reyes-Garcia, Cruz, and Ortega-Montez and transferred them to a Coast Guard cutter, which took them to Miami.  While on the Coast Guard cutter, Reyes-Garcia and Ortega-Montez spoke with another detainee who had been apprehended for an unrelated drug trafficking crime, Eddi Cecilio Arana-Mideros, about their failed plan to transport drugs.

4

**B.    The Criminal Trial**

Ortega-Montez, Reyes-Garcia, and Cruz had a joint jury trial.  At their trial, Derek Sousa, an intelligence research specialist with the Drug Enforcement Administration ("DEA"), testified about how far vessels traveling from Colombia to Mexico could go before needing to refuel, the fact that individuals on vessels often relay information to someone at their destination, and how the Coast Guard and other agencies patrol these areas.  Multiple Coast Guard and Customs and Border Patrol ("CBP") officers involved in coordinating the defendants' arrest also testified.  CBP Senior Officer Timothy Flynn testified about his communication with the Coast Guard during the interception of the defendants. Coast Guard Lieutenant Commander Eric Quigley testified about his previous experience looking for certain types of vessels.  Coast Guard Officer Russell Tofflemire testified about the types of vessels used by drug traffickers and his previous encounters with such vessels.  Coast Guard Officer Joshua Guptill testified about the purpose of the mission, his previous encounters with the type of vessel on which Ortega-Montez was found, the amount of gas in the vessel, and

5

his impression of the electronic devices found on the vessel. Coast Guard Officer Jimmy Cruz testified about the common usage of such vessels for drug trafficking.

Additionally, Arana-Mideros testified about the statements that Reyes-Garcia and Ortega-Montez made to him on the Coast Guard cutter after they were arrested. Codefendants Rengifo-Mendoza and Garcia-Garcia pled guilty and testified at the defendants' trial in the hopes of receiving a reduction in their sentences. Garcia-Garcia testified that he met with Cruz, Ortega-Montez, and Reyes-Garcia and discussed the plan to travel by boat from Mexico to meet up with a delivery boat from Colombia transporting drugs.

The jury convicted Reyes-Garcia, Cruz, and Ortega-Montez. They now appeal their convictions.

## II.    STANDARD OF REVIEW

We generally review a district court's evidentiary rulings, including whether to admit expert testimony, for an abuse of discretion. *United States v. Garcia*, 447 F.3d 1327, 1334 (11th Cir. 2006). "An abuse of discretion occurs if the district court applies an incorrect legal standard or makes findings of fact that are clearly erroneous." *United States v. Wilk*, 572 F.3d 1229, 1234 (11th Cir. 2009). The district court is afforded "considerable leeway" in determining whether expert testimony is reliable. *United States v. Frazier*, 387 F.3d 1244,

1258 (11th Cir. 2004) (internal quotation marks omitted).  We apply harmless error review to improperly admitted expert testimony.  *See United States v. Emmanuel*, 565 F.3d 1324, 1336 (11th Cir. 2009).  "[W]e review *de novo* the question of whether hearsay statements are testimonial for purposes of the Confrontation Clause."  *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010) (internal quotation marks omitted).

If a party "raises a claim of evidentiary error for the first time on appeal, we review it for plain error only."  *United States v. Harris*, 886 F.3d 1120, 1127 (11th Cir. 2018) (internal quotation marks omitted).  "Plain error occurs if (1) there was error, (2) that was plain, (3) that affected the defendant's substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010) (internal quotation marks omitted).  An error is plain if it is clear or obvious. *United States v. Olano*, 507 U.S. 725, 734 (1993).  "[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."  *United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005) (internal quotation marks omitted).

We review *de novo* the sufficiency of the evidence, viewing the evidence in

7

the light most favorable to the government and making all inferences and

credibility determinations in favor of the government and the jury's verdict.

*United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005).  To support a

conviction, the evidence need not "exclude every reasonable hypothesis of

innocence or be wholly inconsistent with every conclusion except that of guilt."

*United States v. Faust*, 456 F.3d 1342, 1345 (11th Cir. 2006) (internal quotation

marks omitted).  Rather, we must affirm "unless, under no reasonable construction

of the evidence, could the jury have found the [defendant] guilty beyond a

reasonable doubt."  *Garcia*, 405 F.3d at 1269.

## III.   DISCUSSION

The defendants argue that the district court abused its discretion in

admitting Sousa's expert testimony and the Coast Guard witnesses' testimony.

Reyes-Garcia and Cruz also argue that the district court erred when it denied their

objections to improper opinion testimony by a government witness about

statements made by nontestifying codefendants, in violation of *Bruton v. United

States*, 391 U.S. 123 (1968), and the Federal Rules of Evidence.  In addition, Cruz

argues that the government witnesses' testimony was inadmissible hearsay, the

cumulative effect of the court's errors in allowing this testimony deprived him of

8

a fair trial and mandates a new trial, and his conviction was not supported by sufficient evidence.

## A. The District Court Did Not Abuse Its Discretion in Admitting Sousa's Expert Testimony.

Before trial, Reyes-Garcia, Ortega-Montez, and Cruz filed a motion in limine arguing that the district court should exclude Sousa's testimony. They now argue that the district court abused its discretion in admitting the testimony.[2] In determining whether expert testimony is admissible under Federal Rule of Evidence 702, the district court considers whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in [*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Delva*, 922 F.3d 1228, 1251 (11th Cir. 2019) (footnote and internal quotation marks omitted). The party offering the expert testimony bears the burden of establishing the expert's qualification, reliability, and helpfulness. *Frazier*, 387 F.3d at 1260. The defendants challenge Sousa's reliability and whether his testimony assisted the jury. They also argue that the district court

---

[2] Cruz filed the motion in limine, and Reyes-Garcia and Cruz adopted its arguments in the district court and on appeal.

9

should have excluded the testimony under Federal Rule of Evidence 403. We conclude that the district court did not abuse its discretion in admitting Sousa's testimony. *Garcia*, 447 F.3d at 1334.[3]

Before trial, the government filed a Notice of Intent to Use Expert Testimony Evidence for Sousa's testimony against all three defendants. The notice explained Sousa's education, prior qualification as an expert in another international narcotics trafficking case, and experience covering "numerous drug and money laundering investigations, including the importation and distribution of cocaine," as well as "intelligence briefings, case and operations briefings, wiretap information, business records, foreign government briefings and debriefings of hundreds of cooperating witnesses." DE 138 at 2. The notice also listed topics about which Sousa would testify, including, among other topics, drug routes international maritime cocaine traffickers use in the Eastern Pacific Ocean, the profile of vessels trafficking these drugs, the use of "delivery" and "receiving" vessels to transfer large amounts of cocaine, drug traffickers' use of coded language to discuss drug trafficking operations, the fact that drug traffickers often fabricate stories for crewmembers to tell law enforcement such as stories about

---

[3] The government argues that we should review the reliability issue only for plain error due to the absence of that objection in district court. Appellee Br. at 32. However, Ortega-Montez explicitly raised the reliability issue in his motion in limine. DE 143 at 4.

searching for lost fishermen, and the fact that the price of cocaine increases as it moves north. DE 138 at 3-4. The government maintained that the testimony was necessary to assist the jury in understanding the significance of certain drug transportation methods.

Cruz filed a motion in limine, which Reyes-Garcia and Ortega-Montez adopted, arguing that Sousa's testimony was unnecessary and that the government had failed to establish the reliability of the testimony. Cruz argued that Sousa's testimony would invade the province of the jury and permit the witness to "vouch for the government's version of the facts." DE 143 at 3. At a pretrial hearing, Cruz also argued that the testimony would not assist the trier of fact. The district court rejected the defendants' arguments as to the reliability of the testimony and its ability to assist the trier of fact and granted the motion in limine only as to Sousa's anticipated testimony on fabricated stories about lost fishermen. DE 165; *see* Fed. R. Evid. 103 ("Once the court rules definitively on the record--either before or at trial--a party need not renew an objection or offer of proof to preserve a claim of error for appeal.")

At trial, the government offered Sousa as "an expert in international narcotics trafficking." DE 208 at 13. Cruz and Ortega-Montez objected to his

11

testimony as irrelevant and prejudicial. The district court overruled the objections, and Sousa testified on the subjects that the district court had approved.

### 1.    Reliability

The defendants argue that the district court abused its discretion in admitting Sousa's testimony because the government failed to show that the methodology by which Sousa reached his conclusions was sufficiently reliable. *Delva*, 922 F.3d at 1251. In response, the government points to its explanation in its notice of expert testimony that Sousa's testimony was based on his experience covering "numerous drug and money laundering investigations, including the importation and distribution of cocaine" as well as "intelligence briefings, case and operations briefings, wiretap information, business records, foreign government briefings and debriefings of hundreds of cooperating witnesses" and argues that this was a sufficient basis for his testimony. DE 138 at 2. We conclude that the district court did not abuse its discretion in admitting Sousa's testimony.

"Exactly *how* reliability is evaluated may vary from case to case." *Frazier,* 387 F.3d at 1261. Using testimony from law enforcement agents as an example, the Advisory Committee Notes to the 2000 Amendments of Federal Rule of

Evidence 702 explain that experience may establish the reliability of expert testimony:

> [W]hen a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that participants in such transactions regularly use code words to conceal the nature of their activities. The method used by the agent is the application of extensive experience to analyze the meaning of the conversations. So long as the principles and methods are reliable and applied reliably to the facts of the case, this type of testimony should be admitted. Nothing in this amendment is intended to suggest that experience alone--or experience in conjunction with other knowledge, skill, training or education--may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.

Fed. R. Evid. 702 advisory committee's notes to 2000 amendments. The Amendment Notes also state that "[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."

Here, the government relied solely on Sousa's experience to establish his reliability and did not explain in the notice of intent to use expert testimony how that experience would lead to his conclusions. However, Sousa's opinions concerned the typical conduct of drug-trafficking organizations, not the defendants' conduct, and his testimony made clear how his experience led to those

13

opinions.  Thus, the district court did not abuse its discretion in admitting this testimony.  *See Wilk*, 572 F.3d at 1234.

### 2.    Assisting the Trier of Fact

Cruz, Reyes-Garcia, and Ortega-Montez argue that the district court erred in admitting Sousa's testimony because the government failed to demonstrate how it would assist the jury.  They argue that the testimony resembled a closing argument, "served as a vouching mechanism for the government's witnesses," and repeated much of the same information that government witness Rengifo-Mendoza provided in his testimony.  Ortega-Montez Reply Br. at 8.  We conclude that the district court did not err in admitting Sousa's testimony because it did, in fact, assist the jury.

Expert testimony assists the trier of fact when it "concerns matters that are beyond the understanding of the average lay person" but not "when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63.  "[A]n experienced narcotics agent may testify as an expert to help a jury understand the significance of certain conduct or methods of operation unique to the drug distribution business."  *Garcia*, 447 F.3d at 1335 (internal quotation marks omitted) (concluding that the district court did not abuse its discretion in allowing a narcotics agent to testify as to the structure of drug

14

trafficking organizations, the specific methods by which they transported and distributed drugs, and their use of coded language); *see also United States v. Jeri*, 869 F.3d 1247, 1267 (11th Cir. 2017) (concluding that the district court did not abuse its discretion in allowing an expert to testify about the street value of the cocaine involved in the offense and the methods used by drug couriers).

We have cautioned, however, that expert testimony that interprets the evidence too broadly may invade the province of the jury. For example, in *Emmanuel*, we concluded that a law enforcement expert properly testified as to the meaning of specific drug code words but improperly interpreted entire conversations involving the defendant. 565 F.3d at 1336. Nonetheless, we concluded that the testimony was unlikely to have affected the defendant's substantial rights, given the district court's instruction that the jury had to decide the meaning of conversations and that the primary evidence against the defendant consisted of his own incriminating conversations.

Here, the district court did not abuse its discretion in allowing Sousa to testify as an expert witness. His testimony fits squarely within the ambit of testimony from an "experienced narcotics agent" that we have approved in cases involving controlled substances. *See Garcia*, 447 F.3d at 1331-32, 1335; *Jeri*, 869 F.3d at 1267. Sousa testified that the type of vessel the defendants were found on

15

typically requires at least two to four crew members.  One crew member will typically communicate with the party to whom they are delivering the cocaine and will often meet the party at sea.  Before the boat meeting the drug-carrying vessel leaves shore, a GPS device is programmed with the location of the meeting point. Because the route from Colombia to Mexico or the United States is so long, boats also need to stop to refuel.  Contrary to the defendants' argument, this testimony offered more than what a lawyer could offer in closing argument.  *Frazier*, 387 F.3d at 1262-63.  Sousa's testimony assisted the jury because he spoke to "matters that are beyond the understanding of the average lay person," such as what DEA agents typically see while investigating drug trafficking cases at sea.  *Id.*  His testimony provided context and significance to the facts of the case and the defendants' actions, including the fact that there were at least three crew members and a captain, Reyes-Garcia, on the vessel.  The fact that the defendants were going to meet another boat at sea to receive cocaine was not atypical for a drug trafficking operation.  Sousa's testimony that boats need to refuel when traveling from Colombia to the United States or Mexico makes sense of the fact that the vessel contained 60 15-gallon jugs of gasoline, a lot of fuel for the size of the boat, as well as some empty fuel jugs.  Sousa's testimony tended to refute the defense that the defendants were innocently looking for lost fishermen.  Thus, the district

court did not abuse its discretion in admitting Sousa's testimony because it assisted the trier of fact.

### 3.     Federal Rule of Evidence 403

At trial, Ortega-Montez and Cruz objected under Federal Rule of Evidence 403 to Sousa's testimony that the price of cocaine increases as it goes north and that cocaine transported through these sea routes is ultimately destined for the United States.  On appeal, the defendants argue that the district court abused its discretion by permitting the government to admit the testimony for the same reasons.[4]  We conclude that the district court did not abuse its discretion.

Under Rule 403, the district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* 403.  In the Rule 403 context, "we view the evidence in the light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Bradberry*, 466 F.3d 1249, 1253 (11th Cir. 2006).  In balancing the interests of Rule 403, the district court should consider, among other

---

[4] The record is unclear regarding whether Reyes-Garcia objected in the district court, but that is inconsequential because the argument fails even under a preserved error standard.

17

things, the prosecutorial need for the evidence and the effectiveness of a limiting instruction.  *United States v. Meester*, 762 F.2d 867, 875 (11th Cir. 1985).  Rule 403 is applied more strictly to proposed expert testimony "because of the potential impact on the jury of expert testimony."  *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." (internal quotation marks omitted) (citations omitted)).

First, the defendants argue that Sousa's testimony that the value of cocaine increases as a vessel travels north was irrelevant and highly prejudicial and therefore should have been excluded under Rule 403.  Sousa testified:  "[W]hat happens to the price of . . . a kilo of cocaine as it moves north towards the United States?"  DE 271 at 34.  "Anywhere from $23,000 per kilo to as high as $36,000 per kilo of cocaine, based on where you are in the United States.  The further north you go from the Mexican border, the more expensive the cocaine will be."  *Id.* at 37.

Second, the defendants argue that Sousa's testimony that the cocaine found on vessels on the high seas is ultimately destined for the United States was unduly prejudicial to the defendants because it suggested that they intended to harm the United States by conspiring to bring cocaine to its shores. Sousa repeatedly testified that cocaine on such vessels is destined for the United States: "Mexico, geographically speaking, is a major transshipment point for the illicit importation of cocaine into the United States." *Id.* at 13-14. Another time he stated, "what we're trying to do is identify the persons who are involved in that production or transportation of cocaine out of Colombia to the United States." *Id.* at 15. Again, he stated, "the objective is to transport the cocaine ultimately to the United States," *id.* at 22, and "the vast majority of cocaine entering the United States comes across the southwest border." *Id.* at 28.

The issue for the jury to decide was whether the defendants conspired to possess with intent to distribute cocaine while aboard a vessel subject to the jurisdiction of the United States. Sousa's testimony that the price of cocaine increases as a vessel goes north was probative because it made it more likely that the defendants had an incentive to pick up cocaine and travel north with it. Because we find that the evidence was probative and because the defendants do not explain on appeal exactly why this testimony was prejudicial, we conclude

19

that the probative value of Sousa's testimony regarding the value of cocaine was not substantially outweighed by any prejudicial effect. *See* Fed. R. Evid. 403; *Jeri*, 869 F.3d at 1267.

Sousa's testimony that vessels carrying cocaine are destined for the United States is probative for the same reason. Further, the defendants' explanation for why it was prejudicial—that it suggested the defendants intended to harm the United States by conspiring to bring cocaine to its shores—could have been mitigated through cross examination. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003) (noting that "vigorous cross-examination" is a traditional tool for attacking weak, but admissible evidence). Recognizing that expert testimony poses a unique risk of prejudice, we nevertheless cannot say that the risk of prejudice of this testimony so substantially outweighed its probative value as to require the district court to exclude it.

**B.**      **The District Court Did Not Abuse Its Discretion in Permitting the Government's Law Enforcement Witnesses to Give Lay Opinion Testimony.**

During trial, the defendants objected to parts of the testimony of the government's witnesses who were officers in the Coast Guard and CBP. The district court overruled their objections and admitted the testimony. On appeal, Reyes-Garcia, Ortega-Montez, and Cruz argue that the district court abused its

20

discretion in admitting the officers' testimony for two reasons.  First, the testimony constituted expert testimony on the practices of drug smugglers based on the witnesses' experiences as law enforcement officers rather than their observations or knowledge of the present case.  Second, the testimony failed Rule 403's balancing test because its probative value was substantially outweighed by its prejudicial effect.  We affirm the district court's rulings.

### 1.     Federal Rule of Evidence 701

In general, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.  If a witness is giving her lay, rather than expert, opinion, her testimony must be:  "(a) rationally based on [her] perception; (b) helpful to clearly understanding [her] testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Id.* 701.  "The determination of whether testimony is properly admitted as lay opinion is based upon the nature of the testimony, not whether the witness could be qualified as an expert." *United States v. Moran*, 778 F.3d 942, 967 (11th Cir. 2015).  Under Rule 701, lay witnesses may testify based on particularized knowledge gained from their own personal experiences. *Id.* Also, a lay witness may testify based on her professional experiences "as long as

21

the testimony is rationally based on those experiences, rather than on scientific or technical knowledge." *United States v. Williams*, 865 F.3d 1328, 1341 (11th Cir. 2017) (internal quotation marks omitted); *see also United States v. Myers*, 972 F.2d 1566, 1577 (11th Cir. 1992) (determining that an officer's identification of stun-gun burn marks based on his observations and 19 years' experience was properly admitted as lay opinion testimony).

In *Williams*, a defendant challenged the introduction of testimony from Coast Guard officers regarding the resemblance of jettisoned objects to cocaine bales they had found in previous drug interdictions on the basis that it was expert testimony. 865 F.3d at 1341. We determined that the testimony was permissible as lay opinion under Rule 701 because it involved the comparison of the appearance and size of objects that were familiar to the witnesses and did not require scientific or technical knowledge. *Id.* at 1341-42; *see also United States v. Tinoco*, 304 F.3d 1088, 1119 (11th Cir. 2002) (determining that a law enforcement officer's testimony that a vessel was a "go-fast" boat was properly admitted as lay opinion because it was based on the officer's personal observation and past experiences in the line of duty, even if the testimony also could have been admitted as expert testimony).

Here, the district court did not abuse its discretion in permitting the

22

government's law enforcement witnesses to give lay opinion testimony. The testimony involved a non-technical comparison of the appearance of the defendants' vessel with those that the officers had seen in the past. It was based on personal and professional experience and direct observations, did not require technical or specialized knowledge, and closely resembled the type of testimony that we have determined to be proper lay opinion testimony in similar cases. *See Williams*, 865 F.3d at 1341-42; *Tinoco*, 304 F.3d at 1119.

### 2.    Federal Rule of Evidence 403

These witnesses' testimony also did not run afoul of Federal Rule of Evidence 403 because its probative value was not substantially outweighed by the risk of unfair prejudice. *See* Fed. R. Evid. 403. The testimony was probative because it increased the likelihood that the defendants had in fact been engaged in drug trafficking and tended to negate their theory of innocence that they were looking for lost fishermen. Ortega-Montez argues that the government inappropriately elicited testimony from the witnesses regarding their professional experience and training, but given that the testimony was permissible under Federal Rule of Evidence 701, and given that we are to view it in the light most favorable to its admission, *United States v. Elkins*, 885 F.2d 775, 784 (1989), we cannot conclude that the potential of unfair prejudice substantially outweighed the

23

probative value of these witnesses' testimony.  Accordingly, we affirm as to all defendants on this issue.

## C.    The District Court Did Not Abuse Its Discretion or Err by Admitting Coconspirator Statements.

Reyes-Garcia and Cruz appeal the admission of non-testifying codefendant Ortega-Montez's statement to another cooperating, testifying arrestee charged in an unrelated drug conspiracy, Arana-Mideros.  They argue that they are entitled to a new trial because the admission of this statement violated their Confrontation Clause rights and the admission was not harmless beyond a reasonable doubt.  Cruz also argues that parts of Arana-Mideros's testimony was inadmissible hearsay.  For the reasons that follow, we discern no reversible error.

Government witness Arana-Mideros met Reyes-Garcia and Ortega-Montez on a Coast Guard cutter after they had all been arrested.  Before trial, Reyes-Garcia and Cruz moved to exclude Arana-Mideros's testimony regarding Ortega-Montez's statements to him, arguing that admission of such statements would violate their rights under *Bruton*.  In *Bruton*, the Supreme Court held that admission of a codefendant's confession that implicated a defendant at their joint trial constituted prejudicial error even though the trial court instructed the jury that the confession could be used only against the codefendant and must be disregarded with respect to the defendant.  391 U.S. at 137.  The district court

24

denied the motion with respect to these statements, concluding that they were non-testimonial and therefore not subject to the requirements of *Bruton*.

At trial, Arana-Mideros testified to what Reyes-Garcia had said to him on the vessel, and Cruz objected on *Bruton* grounds. The court advised the jury to consider the testimony only as it applied to Reyes-Garcia and not to Ortega-Montez or Cruz. Arana-Mideros testified that Reyes-Garcia had told him about the defendants' plan to receive drugs from Rengifo-Mendoza:

> [H]e was the individual that was going to . . . receive the drugs that Raul Rengifo-Mendoza was bringing. . . . [T]hey were coming slowly, as it was getting dark, to meet Raul Rengifo. . . . And he told me that the night was better to receive, because that way the Coast Guard could not see. . . . Since he still had ten miles to go to where Raul was, then then Coast Guard caught up with him. Because he only had the GPS and the satellite phone to get to the route where Raul was. . . . [S]ince . . . there was no more evidence about him, and since in Mexico a boat had disappeared, he was going to say that he was looking for a boat that had disappeared in Mexico.

DE 270 at 85-87.

When the government asked Arana-Mideros what Ortega-Montez had told him on the Coast Guard vessel, Reyes-Garcia objected on *Bruton* grounds. The court sustained the objection and instructed the jury to consider the testimony only as it applied to Ortega-Montez, not to Reyes-Garcia or Cruz. Arana-Mideros then testified:

[Ortega-Montez] also told me that they were coming to receive the drug -- the drugs that Raul Rengifo was bringing over.  And that because they had only found on them the satellite phone, the GPS, and the route, that he was only going to say what the captain had said for them to say[:] . . .[t]hat they were looking for a boat that had disappeared in Mexico.

*Id.* at 88.  Over another *Bruton* objection, this time by Cruz, the district court again instructed the jury to apply the testimony only to Ortega-Montez and not the other two defendants.

### 1.    Confrontation Clause

The Confrontation Cause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  It prohibits the admission of a confession by a nontestifying criminal defendant in a joint trial if the statement inculpates a codefendant, even if the court instructs the jury to use the confession only against certain defendants.  *Bruton*, 391 U.S. at 126.  *Bruton* protection applies only to testimonial statements.  *Whorton v. Bockting*, 549 U.S. 406, 420 (2007); *United States v. Hano*, 922 F.3d 1272, 1287 (11th Cir. 2019).

"Statements made in the course of an out-of-court conversation are testimonial if in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony."  *Hano*, 922 F.3d 1272, 1287 (11th Cir. 2019) (alterations adopted)

26

(internal quotation marks omitted). Testimonial statements include those made in affidavits, custodial examinations, depositions, and during police interrogations. *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004). A "casual remark to an acquaintance" is not testimonial. *Id.* at 51; *see also United States v. Brown*, 441 F.3d 1330, 1360 (11th Cir. 2006) (concluding that a private phone conversation between a mother and her son made inside a house with family members present was nontestimonial and did not prevent an individual who overheard that conversation from testifying as to its substance because the statement "was not made under examination, was not transcribed in a formal document, and was not made under circumstances leading an objective person to reasonably believe the statement would be available for use at a later trial").

We conclude that the statements of Ortega-Montez and Reyes-Garcia to Arana-Mideros were nontestimonial. Viewed objectively, the "primary purpose" of the conversations during which the statements were made was not to create a substitute for trial testimony. *See Hano*, 922 F.3d at 1286-87. Therefore, *Bruton* does not apply.[5] *Id.*

---

[5] Reyes-Garcia argues that this Court has not yet addressed in a published opinion whether *Bruton* applies to nontestimonial statements, but since the parties briefed the appeal this court has published such a decision. *Hano*, 922 F.3d at 1286-87.

### 2.    Cruz's Inadmissible Hearsay Argument

Cruz argues that, even if the codefendants' statements were nontestimonial and not subject to *Bruton*, these statements were inadmissible hearsay.  We conclude that, although the statements were inadmissible hearsay, the district court did not plainly err in admitting them because they did not affect Cruz's substantial rights.

An out of court statement is hearsay if it is "offer[ed] in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c)(2).  A statement offered against an opposing party is not hearsay if it "was made by the party's coconspirator during and in furtherance of the conspiracy."  *Id.* 801(d)(2)(E).  In order for a coconspirator statement to be admissible, "the government must prove by a preponderance of the evidence that:  (1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement was made during the course and in furtherance of the conspiracy."  *Harris*, 886 F.3d at 1130.  Cruz challenges only the government's proof on the third of these elements—that Reyes-Garcia's and Ortega-Montez's statements were made in furtherance of the conspiracy.  Cruz argues that the statements were not in furtherance of the conspiracy because they were made on the Coast Guard cutter after the conspiracy ended.  We agree.

28

"This court applies a liberal standard in determining whether a statement is made in furtherance of a conspiracy." *United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir. 1988). "The statement need not be necessary to the conspiracy, but must only further the interests of the conspiracy in some way." *United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir. 2002). A statement made after an arrest occurs after a conspiracy ends and is therefore not made in the course of the conspiracy. *United States v. Perez-Garcia*, 904 F.2d 1534, 1540 (11th Cir. 1990). Because Reyes-Garcia and Ortega-Montez made these statements after they were arrested on April 9, 2017, they were not made during the course of the conspiracy. Thus, these statements do not fall under the Rule 801's exception to hearsay. The district court erred in admitting these statements.

Because Cruz brings this argument for the first time on appeal, however, we review it for plain error, meaning the error is reversible only if it affected Cruz's substantial rights. *Harris*, 886 F.3d at 1127 (internal quotation marks omitted). An error affects a defendant's substantial rights if it "affected the outcome of the district court proceedings." *Puckett v. United States*, 556 U.S. 129, 130 (2009) (internal quotation marks omitted). "Hearsay errors are harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the verdict, or had but very slight effect." *United States v. Carter*, 776 F.3d 1309,

29

1328 (11th Cir. 2015) (internal quotation marks omitted); *see also United States v. Arbolaez*, 450 F.3d 1283, 1290-91 (11th Cir. 2006) (determining that the district court's improper admission of hearsay evidence was harmless because it was unlikely that it substantially influenced the jury's verdict, given the other strong circumstantial evidence against the defendant). Hearsay statements that are cumulative of other evidence are harmless. *United States v. Weinstein*, 762 F.2d 1522, 1535 (11th Cir. 1985).

Here, an error occurred, and the error was plain because it was clear under our precedent that the statements, made after the codefendants were arrested, were made after the conspiracy had ended. *Olano*, 507 U.S. at 734; *Perez-Garcia*, 904 F.2d at 1540. The testimony did not affect Cruz's substantial rights, however, because it is unlikely that it substantially influenced the jury's verdict, given the strength of the other circumstantial evidence against Cruz. *Puckett*, 556 U.S. at 129.

### 3. Cruz's Cumulative Error Argument

Cruz argues on appeal that the cumulative effect of the district court's errors in admitting multiple inculpatory statements by both of his codefendants had the cumulative effect of depriving him of a fair trial and should mandate a reversal of the conviction and a new trial. We reject his argument.

30

Under the cumulative error doctrine, errors that are harmless by themselves may be sufficient to warrant reversal if, in the aggregate, they have the effect of depriving the defendant of a fair trial. *United States v. Ladson*, 643 F.3d 1335, 1342 (11th Cir. 2011). But "where there is no error or only a single error, there can be no cumulative error." *United States v. House*, 684 F.3d 1173, 1210 (11th Cir. 2012). We consider all errors preserved for appeal and all plain errors in the context of the trial "as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Ladson*, 643 F.3d at 1342 (internal quotation marks omitted). The defendant must establish that the combined errors affected his substantial rights. *Id.* The effect of the errors depends on, among other factors, "the nature and number of the errors committed; their interrelationship, if any, and combined effect; the strength of the government's case; and the length of trial." *House*, 684 F.3d at 1197 (11th Cir. 2012) (alterations adopted) (internal quotation marks omitted).

Cruz argues that the impact of five errors deprived him of a fair trial, but he does not identify those five errors beyond stating that they are mentioned in the introduction of the hearsay section of his brief. We have identified only three issues in that section of his brief: the *Bruton* issue; the denial of a motion to sever based on a *Bruton* violation (which was not argued separately on appeal); and the

31

admission of inadmissible hearsay. As *Bruton* was not implicated, only the inadmissible hearsay error remains to support Cruz's claim. And, as we have concluded, although inadmissible hearsay was admitted, we conclude that the error did not affect Cruz's substantial rights given the other strong circumstantial evidence against him. *Puckett*, 556 U.S. at 129.

**D.    The District Court Did Not Abuse Its Discretion in Denying Cruz's Motion for Judgment of Acquittal and Motion for a New Trial Based on Insufficiency of the Evidence.**

Cruz argues that the district court abused its discretion in denying a motion for judgment of acquittal and a motion for new trial based on insufficiency of the evidence. We cannot agree.

Under the MDLEA, it is unlawful for an individual to conspire to possess with the intent to distribute a controlled substance on board a vessel subject to the jurisdiction of the United States. 46 U.S.C. §§ 70503(a)(1), 70506(b). Cruz does not challenge that the vessel was subject to the jurisdiction of the United States. To prove participation in a conspiracy, the government must prove beyond a reasonable doubt, "even if only by circumstantial evidence, that a conspiracy existed and that the defendant knowingly and voluntarily joined the conspiracy." *Garcia*, 405 F.3d at 1269 (internal quotation marks omitted) (citations omitted). "[T]he government need not prove that the defendants knew all of the detail or

32

participated in every aspect of the conspiracy. Rather, the government must only prove that the defendants knew the essential nature of the conspiracy." *Id.* at 1270 (internal quotation marks omitted). Although not dispositive, the defendant's presence on a vessel is an important factor supporting his participation in a conspiracy "when the presence is such that it would be unreasonable for anyone other than a knowledgeable participant to be present." *United States v. Wilchcombe*, 838 F.3d 1179, 1188 (11th Cir. 2016) (internal quotation marks omitted). However, a defendant's mere presence or association with conspirators is insufficient to establish knowing participation. *United States v. Villegas*, 911 F.2d 623, 629 (11th Cir. 1990). "[W]here the [g]overnment relies on circumstantial evidence, reasonable inferences, and not mere speculation, must support the jury's verdict." *United States v. Isnadin*, 742 F.3d 1278, 1303 (11th Cir. 2014) (internal quotation marks omitted). As long as the government shows that a conspiracy exists and meets its burden of proving knowing participation beyond a reasonable doubt, a defendant may be convicted even if his participation in the conspiracy was "slight" compared to other coconspirators. *United States v. Toler*, 144 F.3d 1423, 1427-28 (11th Cir. 1998).

Viewing the evidence in the light most favorable to the government and the jury's verdict, Cruz's conspiracy conviction was supported by sufficient evidence.

33

*See Garcia*, 405 F.3d at 1269.  The government produced evidence that was sufficient to allow the jury to find beyond a reasonable doubt that Cruz knowingly participated in the conspiracy, even if his participation was "slight" compared to other coconspirators.  *Toler*, 144 F.3d at 1427-28.  Specifically, Garcia-Garcia testified that Cruz attended a meeting with Ortega-Montez and Reyes-Garcia where they discussed the plan to travel by boat from Mexico to meet up with a delivery boat from Colombia transporting drugs.  After the meeting, Garcia-Garcia, Cruz, and Ortega-Montez travelled by bus together to another town to meet with Reyes-Garcia, and they were greeted by armed men who were later waiting for them when they boarded the boat.  The boat had powerful engines and a large stockpile of fuel.  Cruz had a previously established relationship with the Ortega-Montez.  Garcia-Garcia testified that Cruz's responsibilities were the same as the other defendants' responsibilities and included refueling the boat's motors.

Cruz argues that no evidence established his knowledge of the conspiracy's objective or his assent to it.  He argues that he was merely present when others mentioned that they were going to get on a boat to receive drugs.  Furthermore, Cruz is illiterate and was never alleged to have used or even held any of the GPS or satellite phone devices used to communicate with the other boat.  However, the evidence need not exclude every possible theory of innocence to be sufficient.

34

*Faust*, 456 F.3d at 1345.  Because we conclude that, under a reasonable construction of the evidence, a jury could find Cruz guilty beyond a reasonable doubt, we affirm Cruz's conviction.  *See Garcia*, 405 F.3d at 1269.

## IV.    CONCLUSION

For these reasons, we affirm the defendants' convictions.

**AFFIRMED.**

35